UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LONDON

| | |
|---|---|
| CENTRE FIREARMS CO., INC., § § § Plaintiff, § § v. § § OTTER CREEK LABS, LLC, § § Defendant. § § § § § § | Civil Action No. _____ **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Centre Firearms Co., Inc. ("Centre Firearms" or "Plaintiff") files this original Complaint against Defendant Otter Creek Labs, LLC ("Otter Creek" or "Defendant"), for willful patent infringement under 35 U.S.C. § 271. On March 5, 2025, Centre Firearms wrote to Otter Creek notifying Otter Creek of Centre Firearms' patents and invited business discussions. Otter Creek has failed and refused to participate in business discussions, instead choosing to address Centre Firearms' correspondence in a dismissive, vulgar and bigoted manner via social media, while continuing its deliberate infringement. Otter Creek has displayed a complete disregard and even contempt for Centre Firearms' patent rights.

Accordingly, Centre Firearms brings this action for willful patent infringement to stop Otter Creek's unlawful manufacture and sale of infringing products and to recover its damages. Centre Firearms alleges as follows:

## SUMMARY OF DISPUTE

1. Through at least its manufacture, use, offer for sale, and sale of noise suppression devices for firearms, Otter Creek has infringed and continues to infringe at least three Centre Firearms U.S. patents: U.S. Patent Nos. 9,470,466 (the "'466 Patent"); 9,777,979 (the "'979 Patent"); and 9,982,959 (the "'959 Patent) (collectively, the "Asserted Patents"). These patents are directed to a noise suppression device for a firearm.

2. Otter Creek produces, has produced, offers for sale, and sells Otter Creek-brand noise suppression devices for firearms that infringe claims of the Asserted Patents.

3. Centre Firearms brings this action to obtain injunctive and monetary relief for Otter Creek's willful infringement of Centre Firearms' intellectual property rights.

## THE PARTIES

4. Centre Firearms is a New York corporation of the State of New York with a principal place of business at 47-40 Metropolitan Ave., Ridgewood, NY 11385.

5. Otter Creek is a limited liability company organized under the laws of the Commonwealth of Kentucky with a principal place of business at 1545 Hawk Creek Rd., London, Laurel County, Kentucky 40741, and may be served with process via its registered agent, Republic Registered Agent LLC, 271 W. Short St., Suite 140, Lexington, Kentucky 40506. Upon information and belief, Otter Creek does business in London, Laurel County, Kentucky, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers within the judicial District of the Eastern District of Kentucky.

## JURISDICTION

6. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

7. This Court has personal jurisdiction over Otter Creek because Otter Creek is organized and resident in this Judicial District; has committed acts within the Eastern District of Kentucky giving rise to this action; and has established contacts with this forum such that the exercise of jurisdiction over Otter Creek would not offend the traditional notions of fair play and substantial justice. Otter Creek conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the Commonwealth of Kentucky, and elsewhere in the United States by, among other things, having made, offering to sell, and selling products and/or services that infringe the Asserted Patents.

8. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Otter Creek is resident in London, Kentucky, and has committed acts of infringement and has a regular and established place of business in the Eastern District of Kentucky. Otter Creek maintains a corporate office and manufacturing facility at 1545 Hawk Creek Rd., London, Kentucky 40741.

## BACKGROUND

### Background Regarding Centre Firearms

9. Centre Firearms has been providing defense products and operational and logistic support services for over 75 years. Initially focused on the law enforcement market with its pioneering R&D work in laser targeting and blank-firing systems, Centre Firearms has since expanded to service a broad range of clients to include U.S. federal agencies as well as domestic

3

and foreign military customers. Centre Firearms provides procurement and kitting services, import and export facilitation, foreign trade zone operations, and training curriculums.

10. Centre Firearms is established as a supplier of choice to the defense industry as well as servicing the commercial entertainment industry (movies, television, and video gaming) through its New York facilities. Along with updated facilities in New York and Nevada, including the establishment of a Foreign Trade Zone, Centre Firearms' offerings include a comprehensive assembly of firearms, readily accessible for rental, training, demonstration, or R&D, reference, and testing. Centre Firearms' patent portfolio continues to expand and covers technology in suppression devices for firearms, gun sights, and blank firing systems.

### Suppression Devices for Firearms

11. Noise from a gunshot primarily comes from the rapid decompression of extremely hot, high-pressure gas generated by firing a round from a firearm, into the atmosphere. Noise suppression devices (*i.e.*, suppressors) have been available for more than a century and are designed to reduce the noise from a gunshot. Suppressors are attached to a muzzle-end of a firearm and work by slowing, disrupting, cooling, and reducing the pressure of gas before the gas enters the ambient atmosphere. Typically, a suppressor is made of metal and includes a series of chambers and baffles in a tubular housing that together trap, divert, and absorb heat from the gas before the gas exits the suppressor.

### Centre Firearms' Approach to Suppression Devices for Firearms

12. At the time of Centre Firearms' inventions, the state of the art of noise suppressors included designs of modular multiple metal core components including a series of baffles, coaxial tubes, and spacers. During its research and development, Centre Firearms discovered that suppression devices for firearms could be produced with additional design features via manufacturing techniques that improve their reliability, enhance noise reduction, reduce costs, and

4

facilitate customization. Centre Firearms' inventions are directed to monolithic noise suppression devices where all the structural features can be seamlessly provided as one piece, which is fundamental to advancing the current state of the art in noise suppression for firearms. Casting, molding, stamping, machining, and assembly technology prevalent for making noise suppressors prior to Centre Firearms' innovations were not capable of fabricating a complete one-piece monolithic noise suppressor device that includes very precise and intricate features of baffles and internal features with complex shapes, gas channels, and vent holes to cool and divert propellant gas and increase performance.

13. On March 15, 2013, Centre Firearms filed its first patent application with the United States Patent and Trademark Office ("PTO") for inventions related to its technology for suppression devices for firearms.

14. Centre Firearms' inventions significantly improve the reliability of suppression devices.

15. Centre Firearms' inventions enhance the noise reduction and reduce the costs of suppression devices by providing savings throughout the manufacturing process.

16. Centre Firearms' inventions eliminate the restriction on disposability of conventional noise suppression devices.

## THE ASSERTED CENTRE FIREARMS PATENTS

17. The PTO has awarded Centre Firearms multiple patents for its noise suppression devices for firearms technology, including the '466 Patent; the '979 Patent; and the '959 Patent. The Asserted Patents have claims directed to monolithic noise suppression devices.

18. Claim 1 of the '466 Patent is an example of a monolithic noise suppression device assembly:

1. A monolithic noise suppression device for use with a firearm, said device comprising:

5

a body having an outermost external surface of the noise suppression device and an internal surface;

a plurality of internal chambers; and

a core comprising one or more baffles having space between the baffles forming the plurality of internal chambers, seamlessly connected to the internal surface of the body,

wherein the noise suppression device includes no joints, seams, or any formerly separate pieces within any of the body, the core, and the one or more baffles.

19. Claim 1 of the '979 Patent is another example of a monolithic noise suppression device assembly:

1. A noise suppression device for use with a firearm, the device comprising:

a monolithic integral baffle housing module including:

a body including an outermost external surface of the noise suppression device and an internal surface;

a plurality of internal chambers;

a core including a baffle and defining the plurality of internal chambers, and seamlessly connected to the internal surface of the body; and

a blast insert attached to the monolithic integral baffle housing module, wherein

the monolithic integral baffle housing module includes no joints, no seams, or any formerly separate pieces within the body or the core.

20. Claim 1 of the '959 Patent is a further example of a monolithic noise suppression device assembly:

1. A monolithic noise suppression device for use with a firearm, the monolithic noise suppression device comprising:

a body including an outermost external surface of the noise suppression device and an internal surface;

a plurality of internal chambers; and

a core including one or more baffles with space between the one or more baffles defining the plurality of internal chambers, seamlessly connected to the internal surface of the body, wherein

the noise suppression device includes no joints, seams, or any formerly separate pieces within any of the body, the core, and the one or more baffles, and

the monolithic noise suppression device is made of one of a metal and a metal alloy.

21. Centre Firearms is the assignee of the '466 Patent possessing all rights, title, and interest in the '466 Patent entitled "Monolithic Noise Suppression Device for Firearm," which was duly and properly issued by the U.S. Patent and Trademark Office on October 18, 2016. A true and correct copy of the '466 Patent is attached hereto as **Exhibit 1**.

22. Centre Firearms is the assignee of the '979 Patent possessing all rights, title, and interest in the '979 Patent entitled "Monolithic Noise Suppression Device for Firearm," which was duly and properly issued by the U.S. Patent and Trademark Office on October 3, 2017. A true and correct copy of the '979 Patent is attached hereto as **Exhibit 2**.

23. Centre Firearms is the assignee of the '959 Patent possessing all rights, title, and interest in the '959 Patent entitled "Monolithic Noise Suppression Device for Firearm," which was duly and properly issued by the U.S. Patent and Trademark Office on May 29, 2018. A true and correct copy of the '959 Patent is attached hereto as **Exhibit 3**.

## OTTER CREEK'S INFRINGING PRODUCTS

24. Otter Creek primarily designs, manufactures, and sells firearm accessories, including noise suppressors for various calibers, alongside other muzzle-end devices like flash hiders, muzzle brakes, and mounts.

25. Specifically, Otter Creek designs, manufactures or has made, advertises, and sells an "Infinity" model suppressor. *See* https://ottercreeklabs.com/product/infinity-7-62/. "Being

made from DMLS [direct metal laser sintering] 3D printed & heat treated 718 inconel this thing is tough as nails." *Id.*

26. Upon information and belief, the "Infinity" suppressor as manufactured and/or made for, advertised, offered for sale, and/or sold by Otter Creek and other dealers and resellers infringes the Asserted Patents (collectively, the "Accused Products").

27. Upon information and belief, Otter Creek owns, leases, maintains, and/or operates a manufacturing facility in London, Kentucky that manufactures noise suppression devices for firearms.

## OTTER CREEK'S WILLFUL INFRINGEMENT

28. In 2024, Centre Firearms procured an Otter Creek Infinity 7.62 MM suppressor product, identification SLK01370.

29. On March 5, 2025, Centre Firearms sent a letter to Andrew King (owner) at Otter Creek (**Exhibit 4**) informing Otter Creek of the Asserted Patents and inviting a discussion.

30. On May 29, 2025, Centre Firearms sent a follow-up letter to Mr. King (**Exhibit 5**) inviting business discussions.

31. After a telephone conversation between Ryder Washburn of Centre Firearms and Andrew King (elder) of Otter Creek, on June 3, 2025, Centre Firearms emailed Otter Creek (**Exhibit 6**) a draft Mutual Non-Disclosure Agreement ("NDA") (**Exhibit 7**).

32. On June 12, 2025, Mr. Washburn of Centre Firearms and Mr. King (elder) of Otter Creek communicated via a text exchange following up on the NDA. Mr. King (elder) indicated that the previous letters from Centre Firearms and the draft NDA were forwarded to Otter Creek's counsel for review.

33. Having received no further communication from Otter Creek, on July 15, 2025, counsel for Centre Firearms sent an email to sales@ottercreeklabs.com (**Exhibit 8**) requesting the status of Otter Creek's NDA review. Again, Otter Creek sent no response.

34. On July 23, 2023, Mr. Washburn of Centre Firearms sent Mr. King (elder) of Otter Creek a text message requesting the status of Otter Creek's NDA review. Otter Creek did not respond.

35. On July 30, 2025, Centre Firearms' counsel sent a letter to Otter Creek (**Exhibit 9**) forwarding another copy of the NDA, and requesting a response by August 6, 2025. Yet again Otter Creek failed to respond.

36. In view of Otter Creek's repeated failure and refusal to respond to its communications, on August 21, 2025, Centre Firearms' counsel sent a cease-and-desist letter to Otter Creek (**Exhibit 10**). Rather than responding to this letter, Otter Creek instead chose to post a photograph of the letter on the social media network Instagram, accompanied by vulgar and bigoted comments referring to "[t]he retard at Centre firearms" and saying "I ain't scared nor ceasing dick." *See* @otter_dump, Instagram (Aug. 25, 2025), http://instagram.com/otter_dump.

37. Otter Creek's Instagram posts also confirm its willful and deliberate infringement of Centre Firearms' patents. On August 25, 2025, Otter Creek posted a photograph of Centre Firearms' August 21 letter on its company Instagram account accompanied by the following statement: "We still plan on releasing all printed models we've been working on as scheduled." *See* @ottercreeklabs, Instagram (Aug. 25, 2025), http://instagram.com/ottercreeklabs. And in a September 1, 2025, Instagram post, the principal of Otter Creek wrote "Not only am I not ceasing Nor am I desisting I'm releasing more printed fucking cans," accompanied by a photograph of the

9

actor Leonardo DiCaprio with his middle finger raised towards the camera. *See* @otter_dump, Instagram (Sept. 1, 2025), http://instagram.com/otter_dump.

38. Otter Creek continues to make, has made, offers to sell, and sells noise suppression devices for firearms that infringe Centre Firearms' Asserted Patents.

**COUNT I – INFRINGEMENT OF THE '466 PATENT**

39. Centre Firearms hereby incorporates by reference its allegations contained in paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40. Otter Creek has directly infringed and continues to directly infringe various claims of the '466 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling the Accused Products in the United States.

41. As shown in the claim chart in **Exhibit 11**, Otter Creek has infringed and is infringing at least claim 1 of the '466 Patent.

42. Otter Creek has induced others to manufacture, use, import, offer to sell, and/or sell the Accused Products. After it learned of the '466 Patent, Otter Creek has induced infringement of the '466 Patent in violation of 35 U.S.C. § 271(b), including by selling the Accused Products in the United States for subsequent use or re-sale by Otter Creek's customers, and by providing those customers with marketing material and/or product packaging intended to promote subsequent use and re-sale.

43. Otter Creek does not have a license or permission to use the '466 Patent.

44. Otter Creek has been willfully infringing the '466 Patent since at least the time it received Centre Firearms' March 5, 2025, letter.

45. Otter Creek has refused to engage in business discussions and has deliberately and wantonly continued its infringement.

46. As a result of Otter Creek's infringement of the '466 Patent, Centre Firearms has suffered and will continue to suffer damages, in an amount not yet determined, of at least a reasonably royalty.

## COUNT II – INFRINGEMENT OF THE '979 PATENT

47. Centre Firearms hereby incorporates by reference its allegations contained in paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48. Otter Creek has directly infringed and continues to directly infringe various claims of the '979 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling the Accused Products in the United States.

49. As shown in the claim chart in **Exhibit 12**, Otter Creek has infringed and is infringing at least claim 1 of the '979 Patent.

50. Otter Creek has induced others to manufacture, use, import, offer to sell, and/or sell the Accused Products. After it learned of the '979 Patent, Otter Creek has induced infringement of the '979 Patent in violation of 35 U.S.C. § 271(b), including by selling the Accused Products in the United States for subsequent use or re-sale by Otter Creek's customers, and by providing those customers with marketing material and/or product packaging intended to promote subsequent use and re-sale.

51. Otter Creek does not have a license or permission to use the '979 Patent.

52. Otter Creek has been willfully infringing the '979 Patent since at least the time it received Centre Firearms' March 5, 2025, letter.

53. Otter Creek has refused to engage in business discussions and has deliberately and wantonly continued its infringement.

54. As a result of Otter Creek's infringement of the '979 Patent, Centre Firearms has suffered and will continue to suffer damages, in an amount not yet determined, of at least a reasonably royalty.

## COUNT III – INFRINGEMENT OF THE '959 PATENT

55. Centre Firearms hereby incorporates by reference its allegations contained in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56. Otter Creek has directly infringed and continues to directly infringe various claims of the '959 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling the Accused Products in the United States.

57. As shown in the claim chart in **Exhibit 13**, Otter Creek has infringed and is infringing at least claim 1 of the '959 Patent.

58. Otter Creek has continued to sell or induced others to manufacture, use, import, offer to sell, and/or sell the Accused Products. After it learned of the '959 Patent, Otter Creek has induced infringement of the '959 Patent in violation of 35 U.S.C. § 271(b), including by selling the Accused Products in the United States for subsequent use or re-sale by Otter Creek's customers, and by providing those customers with marketing material and/or product packaging intended to promote subsequent use and re-sale.

59. Otter Creek does not have a license or permission to use the '959 Patent.

60. Otter Creek has been willfully infringing the '959 Patent since at least the time it received Centre Firearms' March 5, 2025, letter.

61. Otter Creek has refused to engage in business discussions and has deliberately and wantonly continued its infringement.

12

62. As a result of Otter Creek's infringement of the '959 Patent, Centre Firearms has suffered and will continue to suffer damages, in an amount not yet determined, of at least a reasonably royalty.

## PRAYER FOR RELIEF

WHEREFORE, Centre Firearms prays for relief as follows:

A. For a judgment that Otter Creek has infringed the Asserted Patents;

B. For a judgment that Otter Creek's infringement of the Asserted Patents has been willful;

C. For a grant of an injunction pursuant to 35 U.S.C. § 283, enjoining Otter Creek from further acts of infringement;

D. For a judgment awarding Centre Firearms compensatory damages as a result of Otter Creek's infringement of the Asserted Patents, together with interest, including post-judgment interest, and costs, and in no event less than a reasonable royalty and an accounting;

E. For a judgement that this case is exceptional and awarding Centre Firearms its expenses, costs, and attorneys' fees in accordance with 35 U.S.C. § 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

F. For a judgment awarding Centre Firearms enhanced damages under 35 U.S.C. § 284; and

G. For such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Centre Firearms hereby demands a trial by jury in this action.

Respectfully submitted,

*/s/ Clayton O. Oswald*
Clayton O. Oswald
**TAYLOR, KELLER & OSWALD, PLLC**
1306 W. 5th St, Suite 100
P.O. Box 3440
London, KY 40743-3440
Tel.: (606) 878-8844
coswald@tkolegal.com

*Attorneys for Plaintiff Centre Firearms Co., Inc.*

14